### Streator Independent Telephone Company v. Continental Telephone Construction Company.

#### Gen. No. 11,455.

1. MOTION FOR NEW TRIAL—*effect of failure to file written motion, specifying grounds therefor.* Where the losing party fails to file a written motion for a new trial, specifying the grounds therefor, his right to review the judgment is in no wise affected where the successful party has failed to move that such a motion be filed.

2.  SPECIFICATIONS—*when, incompetent.*  Specifications, even though material, are not competent in a case where they are not properly identified.

Action of assumpsit.  Appeal from the Circuit Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1903.  Affirmed.  Opinion filed January 20, 1905.

Statement by the Court.   This is an appeal from a judgment recovered in the Circuit Court of Cook County in an action of assumpsit brought by appellee against appellant and others.   On the trial appellee dismissed as to the other defendants and amended its declaration by striking out their names.   The jury rendered a verdict for $5,773.03 in favor of the plaintiff.   On the hearing of the motion for a new trial the plaintiff remitted $477.70 and the court overruled the motion and entered judgment against appellant for $5,295.33.

Appellant assigns error on the rulings of the court in admitting and excluding evidence; on the refusal of the court to instruct for the defendant at the close of plaintiff's evidence; in denying the motion for new trial; the giving of plaintiff's instructions, and that the verdict is against the weight of the evidence and contrary to the law.

The Continental Telephone Construction Company, on January 2, 1901, made a contract with A. W. Stromberg, C. W. Stiger, F. B. Patton, M. D. Patton and John W. Blee, as individuals, for the construction and installation for them of a telephone system and exchange in the city of Streator, Illinois.   The contract required appellee to furnish all necessary material, apparatus and labor to construct, equip, place in operation for constant use, and to sell and deliver to Stromberg and others, the parties of the second part, a public telephone exchange system in Streator, Illinois; and provided how the work was to be done, and that it was to contain 300 long distance telephones, and that the exchange should be so constructed that it might be increased at any time to accommodate up to 1,000 subscribers' lines.   The second parties were to pay for this work $38,900 in pay-

ments as set forth in the contract, and were to secure the proper franchise, rights of way and necessary permits to enable the work to be done without legal interference.

Prior to the making of the above contract and on September 29, 1900, application had been made to the Secretary of State for the charter of appellant. Its organization, however, was not fully completed until September 5, 1901, and its charter was recorded in La Salle county September 6, 1901.

The exchange was constructed and installed with fifty additional lines more than the original contract called for, and was put in operation on July 1, 1901, and paid for. Between July 1, 1901, and September 13, 1901, at the request of Stromberg and Stiger, who were acting for appellant, appellee built fifty-three additional lines at an agreed price of $79 for each line. This is one of the items sued for in this case. The exchange was put in operation July 1, 1901, and was operated by appellee in the name of the appellant company until September 13, 1901. Appellee during this time paid all the cost of maintenance and of operation, sending out the bills in the name of the Streator Independent Telephone Company, and the latter company received the money collected for the service rendered. On September 13, 1901, appellee, by direction of Stromberg and Stiger, who owned 797 shares of the 800 shares of capital stock of the Streator Independent Telephone Company, turned over to appellant company, then fully organized, the telephone exchange and plant complete in satisfactory working order, with four hundred and three subscribers' lines connected direct with central office, and also a large quantity of materials consisting of poles, telephone wire, cables, etc., which appellant company would use in constructing additional lines in the progress of its business, and the receipt of appellant company specifying the property in detail was given to appellee. The evidence tends to show that the gross amount of this material, at the regular market price, was $1,820.39. Appellee also sold and delivered to appellant on December 26, 1901, tools used in

constructing the exchange, which were worth at the market price, as the evidence shows, $111.98. These items for materials and tools are also sued for in this proceeding. Statements were rendered for the above property and cash disbursements in conducting the business, with the exception of the tool account, in September, October and November, 1901. The total amount of the bills rendered to appellant by appellee on each of these three different occasions was $5,661.05. In January, 1902, another statement of account, including the tool account, was sent by appellee to appellant, amounting to $5,773.03, with a request for prompt remittance. Subsequently the secretary of appellee took up the matter of the adjustment of the account with C. W. Stiger, treasurer of appellant; and he then, for the first time, claimed an offset against the account for some lines they had to rebuild or change. Stiger promised to make out an itemized statement of their offset and send it to appellee, which he did on February 20, 1902. The total counter claim which he then made was $401.35. Nothing was done as to a settlement of this set-off prior to commencing suit, although appellee appears to have made efforts to come to an understanding with appellant in regard to it.

No evidence was offered by appellant in proof of the set-off claimed or in disproof of the account of appellee sued on.

HOSEA W. WELLS, for appellant.

WARVELLE & CLITHERO, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

Appellee urges, with much apparent confidence, that a judgment of affirmance must be entered in this court because appellant did not, during the term of court at which the judgment was entered, file the points in writing, particularly specifying the grounds of its motion for a new trial. In support of this contention counsel cite Call v. People, 201 Ill. 499, as overruling O., O. & F. R. V. R. R. Co. v. McMath, 91 Ill. 104, and other cases holding to the theory of a

waiver of the written points unless counsel or the court require them to be filed. We .do not think the point is well taken. In the case of Call v. People the bill of exceptions showed that a written motion for a new trial was filed, but did not show the grounds which were specified therein; and following the rule that no grounds other than those set out in the motion for a new trial could be considered by a reviewing court, it was held that the Supreme Court could not consider, in reviewing a judgment in a case tried before a jury, the points made on the written motion, because the bill of exceptions did not present the grounds on which the motion was based. Appellant in that case was confined to the grounds specified in the motion, and the knowledge of those grounds could come to the Supreme Court only through the bill of exceptions. The court could not review that of which it had no knowledge. That decision applies to a case tried before a jury where a written motion for a new trial was filed, and the bill of exceptions shows that fact, but does not set out the grounds of the motion. It has no application to this case. In this case the bill of exceptions shows that a motion for a new trial was made and overruled, and an exception was taken to the ruling. Appellee did not ask to have the motion filed in writing, as he had a right to do under the statute. A written motion was therefore waived, and counsel for appellant may assign any error in this court which may have occurred in the proceedings in the Circuit Court, and it is the duty of this court to review and to decide all material points presented to us, under the authorities and the settled rule of practice in this state.

By the uncontradicted evidence in this case it appears that, prior to the making of the original contracts, steps had been taken to organize appellant company for the purpose of obtaining a franchise to construct and operate a general public telephone exchange in the city of Streator, Illinois, by Stromberg and others, the parties who entered into the original contracts with appellee. While that organization was being perfected Stromberg and the parties

interested with him entered into the contract with appellee. The contract was fully completed and executed by appellee, and fifty additional lines were constructed and installed, and the exchange was put in operation by July 1, 1901, and all settled and paid for by the parties interested in the enterprise. Between July 1, 1901, and September 13, 1901, but at exactly what date does not appear, at the request and under the direction of Stromberg and Stiger, who jointly owned 797 shares of the 800 shares of the capital stock of appellant company, appellee constructed and installed fifty-three additional lines at an agreed price of $79 per line. At the request of Stromberg and Stiger, and by their direction, appellee operated the exchange under the name of appellant from July 1, 1901, to September 13, 1901, and paid the cost of operating and of maintenance. The moneys so paid out, and the agreed price of constructing the fifty-three additional lines, and the materials and tools turned over and sold to appellant, constitute the account sued on by appellee, and upon which judgment was rendered. These items aggregated $6,119.37, leaving out the items of cash disbursements made in operating the exchange. Upon this amount credits were allowed for payments made and the offsets claimed by Stiger, treasurer of appellant, and judgment was entered for the balance.

In the view we take of the evidence the items making up this total claim were sufficiently proven, and upon the merits of the case appellee was justly entitled to its judgment. Appellant had in its possession and use on September 13, 1901, when it was fully organized and doing business, all the property in question. It received the materials and tools after it was fully organized, and it took over the fifty-three additional lines after it was fully incorporated, under circumstances which show clearly that it assumed and agreed to pay for the work, materials, tools and property, and that, equitably and justly, it ought to pay for them.

We do not see, under the uncontroverted facts disclosed by the record, that the authorities cited by appellant to the

effect that a corporation must have a complete organization as a legal entity before it can enter into contracts or transact business, have any application. The jury were warranted in finding that appellant assumed and agreed to pay for the lines, tools and materials which were turned over to it by appellee after it was fully organized.

It follows, from what we have said, that we do not think the court below erred in refusing to direct a verdict for appellant. Had the court given the instruction asked by appellant it would have been error.

Appellant contends that the trial court erred in excluding certain specifications which were offered in evidence by appellant. The contract does not refer to, or make a part of it, by reference or otherwise, any specification. Henry Shafer, a witness for appellee, was cross-examined by counsel for appellant in regard to specifications for this exchange, and testified that the only specifications that the exchange was built on were contained in the contract. Mr. Nelson, called by appellant, testified that he had charge of the men in the construction of the telephone plant in question, and that he had specifications for the underground system which were furnished by Shafer; that he had no specifications for the air. He did not identify any specifications. Alfred Stromberg, president of appellant company, did not identify the specifications offered. He did not know who had the specifications. The set of specifications offered were unsigned and unidentified in any manner, and on their face purported to be "specifications for the Streator, Illinois, Telephone Company, La Salle County," and appear to be mutilated and changed in many substantial particulars, and no explanation of the changes was offered. They nowhere refer to the contract for the construction of the telephone plant in question. We think, therefore, they were properly excluded.

No errors in giving or refusing instructions at the close of the trial are pointed out to us. We do not find any reversible error in the record. The judgment is affirmed.

*Affirmed.*